**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HOZAY ROYAL, | |
| Petitioner, | Civil Action No. 16-6498 (CCC) |
| v. | **OPINION** |
| THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, et al., | |
| Respondents. | |

**CECCHI, District Judge.**

Petitioner Hozay Royal files the instant Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging a conviction and sentence imposed by the State of New Jersey for credit card fraud and other related crimes. ECF No. 12. Respondents have filed a Response, (ECF No. 18), and Petitioner has filed a Reply (ECF No. 22). For the reasons stated below, the Court **DENIES** the Petition.

**I.    FACTUAL BACKGROUND**

For the purposes of this Opinion, the Court recites only relevant facts, as summarized by the state appellate court on direct appeal in *State v. Royal*, No. A-6069-12T2, slip op. at 2-8 (N.J. Sup. Ct. App. Div. Feb. 17, 2016) (ECF No. 18-17). On July 17, 2010, the owner of a retail appliance store in Flanders, New Jersey, received a call from a person who identified himself as "Eldridge" to purchase goods totaling $1,612.49. Eldridge provided a credit card number as payment. Two days later, a man who claimed to be Eldridge's nephew arrived in a white Ryder van to pick up the merchandise. The owner, suspicious of fraud, asked for identification, and the

man immediately left without taking possession of the merchandise. The owner contacted the authorities, and gave them the license plate number of the van as well as the paperwork for the credit card transaction. The credit card number, as it turned out, belonged to a person in Switzerland who did not authorize the purchase.

In a separate incident that occurred a few days earlier on July 12, 2010, a man who identified himself as "Tom Hanson" called a different appliance store in Rutherford, New Jersey, also to purchase some merchandise with a credit card. The first credit card number given to the store clerk was declined, but the second was accepted. Hanson also provided a phone number to the store clerk that was the same phone number provided to the Flanders store. A person driving a white Ryder van picked up the item a few days later. On July 16, 2010, Hanson placed another purchase with the Rutherford store, using the same credit card that was accepted on July 12. This time, the card was declined, so Hanson gave the clerk a third credit card, but instructed the clerk to charge only $300 on the card, and that the rest would be paid at pickup. The clerk immediately called the police.

On July 20, Hanson called the Rutherford store again, and provided a fourth credit card number to pay the remaining balance. The card was declined, and Hanson provided a fifth credit card number. Although this fifth card was again declined, at the instruction of the police, the clerk told Hanson the card had been accepted. That afternoon, Petitioner, who identified himself as Hanson's nephew, arrived in the same white Ryder van to pick up the merchandise. The clerk testified at trial that this was the same man who picked up the July 12 order. When Petitioner was loading the merchandise into the van, police officers, who had been posing as store employees while waiting for Petitioner's arrival, arrested him. Police then searched the van, and seized a bag inside, which contained a number of documents with numerous credit card numbers on them. The

white Ryder van seized on July 20 had the same license plate number as the one identified by the owner of the Flanders store.

Using the details of the Rutherford incident, as well as information obtained in the documents seized, Rutherford police created and disseminated a "Critical Reach Flyer" (the "Flyer"), intended to inform other jurisdictions of the charges against Petitioner. Flanders police saw the Flyer, and recognized that Petitioner may be the same person who committed the Flanders offense. A photo array identification procedure was conducted with the owner of the Flanders store, and Petitioner was identified as the person who attempted to pick up the merchandise at the Flanders store. Petitioner was charged for the Flanders crime after this positive identification. This charge and the subsequent conviction is the subject of the instant Petition.

During pretrial, Petitioner filed two motions to suppress, arguing that the information obtained from the search of the van and seizure of the bag at Rutherford was the result of an illegal search and seizure. Because the information used to create the Flyer contained this illegally obtained information, Petitioner asserts that the Flyer, and all subsequent evidence procured through the Flyer, must be suppressed. The trial court found the search and seizure illegal, and suppressed part of the Flyer that was derived using the illegally obtained information. It refused to suppress the rest of the Flyer, created using information related to the investigation and arrest that occurred before the search, and found that the unsuppressed portion contained enough information to sufficiently connect Petitioner to the Flanders crime to arrest and charge Petitioner. Petitioner was convicted in a jury trial.

After the instant Petition was filed, the Court screened the Petition, and dismissed Ground Two of the Petition for failure to state a cognizable habeas claim, and allowed the rest of the

Petition to proceed. ECF No. 15. Petitioner sought reconsideration of the dismissal, which was denied. ECF No. 26.

## II.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When a claim has been adjudicated on the merits in state court proceedings, a writ for habeas corpus shall not issue unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d); *see also Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2012).

A state-court decision involves an "unreasonable application" of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000). Federal courts must follow a highly deferential standard when evaluating, and thus give the benefit of the doubt to, state court decisions. *See Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011); *Eley v. Erickson*, 712 F.3d 837, 845 (3d Cir. 2013). A state court decision is based on an unreasonable determination of the facts only if the state court's factual findings are objectively unreasonable in light of the evidence presented in the state-court

4

proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e); *see Rice v. Collins*, 546 U.S. 333, 339 (2006) (petitioner bears the burden of rebutting presumption by clear and convincing evidence); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001) (factual determinations of state trial and appellate courts are presumed to be correct).

## III. DISCUSSION

Petitioner raises three claims in the Petition: (1) the trial court erred in not suppressing the Flyer in its entirety, and all evidence that was gathered due to the existence of the Flyer; (2) the government did not follow proper identification procedures under state law; and (3) evidence on the record did not sustain the government's burden of proof at trial. As stated above, the Court has already dismissed Ground Two on screening. ECF No. 15. The Court expresses its opinion on Grounds One and Three below.

### A. Ground One – the Flyer

Petitioner argues that the trial court should have suppressed the Flyer in its entirety, because its creation was the result of the evidence obtained by illegal search and seizure of the van and his bag in Rutherford. He further argues that without the Flyer, the trial court should have suppressed all evidence subsequently obtained, as the issuance of the Flyer was what connected the instant crime to the Rutherford crime and led to Petitioner's arrest and charge. Respondent argues that this claim is barred by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976). The Court agrees with Respondent.

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground

that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494. "[C]onsideration of a claim that evidence admitted at trial was the fruit of an illegal arrest c[an] not be considered on a habeas corpus petition so long as the state courts had afforded a full and fair opportunity to litigate that claim." *Jones v. Superintendent of Rahway State Prison*, 725 F.2d 40, 42 (3d Cir. 1984) (citing *Cardwell v. Taylor*, 461 U.S. 571 (1983)). Here, Petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment claim, in the form of two motions to suppress and related hearings, as well as raising it on direct appeal, so the Court is barred from granting habeas relief based on the merits of Petitioner's claim.

Moreover, Petitioner's claim fails on the merits regardless. The crux of Petitioner's claim is that because the Flyer was created using illegally obtained evidence, all evidence gathered subsequently, including the photo array identification, should have been excluded from trial as fruits of the poisonous tree, since the Flyer led the government to discover that the crimes were related. However, there are exceptions to the fruit of the poisonous tree doctrine.

> When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation. There is a functional similarity between these two doctrines in that exclusion of evidence that would inevitably have been discovered would also put the government in a worse position, because the police would have obtained that evidence if no misconduct had taken place. Thus, while the independent source exception would not justify admission of evidence in this case, its rationale is wholly consistent with and justifies our adoption of the ultimate or inevitable discovery exception to the exclusionary rule.

*Nix v. Williams*, 467 U.S. 431, 443-44 (1984); *see Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016) (acknowledging the "inevitable discovery" exception enunciated in *Nix*).

Here, Petitioner's fruit of the poisonous tree claim is entirely based on the government's ability to connect the instant crime to the Rutherford crime. Unable to connect the two crimes together, Petitioner argues, the government would lack sufficient evidence for a conviction here.

6

However, no plausible argument can be made that without the Flyer, the government would have *never* been able to connect the two crimes together. While the Flyer may have helped the government make the connection, it is not difficult to conclude that even without the Flyer, the government would have eventually made the connection between two crimes both involving credit card fraud, orders placed over the phone, the use of a white Ryder van, and the perpetrator claiming to be the "nephew" of the credit card holder—the similarities between the two crimes were striking. The government also could have discovered that the two crimes were related based on the license plate number of the white Ryder van, as the same van was used for both crimes, or that the same phone number was given by the perpetrator to both appliance stores. Indeed, this is consistent with the trial court's finding on the motions to suppress, that the untainted information contained in the Flyer led to the discovery that Petitioner was involved in the instant offense. Even if the Court accepts Petitioner's argument that the Flyer should have been excluded in its entirety, it would not have resulted in the exclusion of subsequently gathered evidence due to the inevitable discovery exception; consistent with the trial court's reasoning, a different flyer, created with only untainted information, would have led to the same result. As such, the Court finds that this claim is both barred by *Stone* and meritless, and relief is denied.

### B. Ground Three – Insufficient Evidence

Petitioner argues that the jury verdict against him was unconstitutional because the government failed to prove an essential element of the credit card fraud, namely that state law required the government to prove beyond a reasonable doubt that he "obtained money, goods, services or anything else of value." *See Royal*, slip op. at 9. The state court construed this claim as Petitioner challenging the jury instruction given by the trial court, in that it did not define the term "obtain" to the jury. *Id.* at 10. In his Reply here, however, Petitioner explicitly rejects that

construction, and simply asserts the government failed to prove that essential element because he left the Flanders store before taking physical possession of the goods purchased and, therefore, did not "obtain" the goods. *See* ECF No. 22 at 14-17.

Of course, the state court's construction of the claim is indisputably related to Petitioner's actual claim. Petitioner's argument necessarily turns on what it means to "obtain" something. In that regard, the state court concluded, in addition to finding the trial court did not err in its jury instructions, that

> although defendant did not physically remove the items from [the Flanders] store, they had been paid for, specially ordered, and were outside awaiting defendant's arrival. That he drove away, fearing arrest, before he actually put the items in the vehicle was inconsequential. He obtained the goods and then chose to leave them behind.

*Royal*, slip op. at 12.

The state court's decision complies with established federal law and was based on a reasonable determination of the facts. This Court does not have authority to second-guess the state court's interpretation of its own state law. By finding that the facts of this case comported with the state statute, the state court necessarily interpreted the statute to encompass Petitioner's conduct, and its interpretation is not subject to review on federal habeas. "Absent extraordinary circumstances, the state courts will have the final word on the substantive criminal law." *Gillespie v. Ryan*, 837 F.2d 628, 632 (3d Cir. 1988); *see Knight v. Beyer*, No. 88-3180, 1989 WL 68618, at *4 (D.N.J. June 22, 1989) ("[A] state court's interpretation of a state criminal statute is binding on a federal court reviewing the merits of a habeas corpus petition."); *see also Buehl v. Vaughn*, 166 F.3d 163, 175-76 (3d Cir. 1999) (holding that state court's interpretation of its own statute is only unconstitutional if it is an "obvious subterfuge to evade consideration of a federal issue" or "plainly untenable") (citing *Mullaney v. Wilbur*, 421 U.S. 684, 691 n.11 (1975) & *Ward v. Love Cty.*, 253

U.S. 17, 22 (1920)). That Petitioner disagrees with the state court's definition of "obtain" does not transform his claim to one of insufficient evidence. This Court is bound by the state court's interpretation of the state statute, not Petitioner's, and Petitioner cites to no authority to show that the state court's interpretation was incorrect, let alone unreasonable. Accordingly, the Court cannot find that the state court was unreasonable to reject Petitioner's definition of "obtain." Therefore, relief on this claim is denied.[1]

### C. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El*, 537 U.S. at 327.

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, no certificate of appealability shall issue.

---

[1] The Court is aware that, although not raised in the Petition, Petitioner also seemingly raises a claim regarding fabricated evidence in his briefs. The Court has thoroughly reviewed Petitioner's brief on direct appeal, (ECF No. 18-13), and it appears to contain no allegation that any evidence was fabricated. As such, Petitioner failed to exhaust state court remedies based on allegations of fabricated evidence, and the Court cannot grant habeas relief on such a claim. *See* 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State.").

## IV. CONCLUSION

For the reasons set forth above, the Petition is **DENIED**, and the Court **DENIES** a certificate of appealability.

Dated: May 9, 2018

_____
**Claire C. Cecchi**
**United States District Judge**